CIVILLE & TANG, PLLC
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
FACSIMILE: (671) 477-2511

*Attorneys for Defendant*



FILED
DISTRICT COURT OF GUAM
MAY 23 2006
MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO. CR01-00007-001 |
| Plaintiff, ) | |
| vs. ) | DEFENDANT'S RESPONSE AND OBJECTIONS TO FINANCIAL STATUS AND PROPOSED PAYMENT SCHEDULE REPORT |
| AUSTIN J. "SONNY" SHELTON, ) | |
| Defendant. ) | |

Defendant Austin "Sonny" Shelton, through counsel, objects and responds to the Financial Status and Proposed Payment Schedule Report ("Proposed Schedule") submitted by the Probation Department. The Probation Officer who prepared the report complains that he had difficulty obtaining financial information about "the Shelton household" from the defendant's wife, Graciella Shelton, because Mrs. Shelton was concerned that the probation officer was trying to use her income to increase the amount of the defendant's restitution payments. *See, Proposed Schedule,* opening paragraphs.

Mrs. Shelton did in fact cooperate with the probation department, but as it turns out, her fears about why the probation officer was so interested in *her income* (the Proposed Schedule does not even mention the defendant's prison income) was justified. See, *Id.* ¶¶ 18-28. The crux of the problem with the Proposed Schedule can be found in the final paragraph, under the heading

Recommendation, where the Probation Officer states, "Based on an analysis of the Shelton household's essential and non-essential monthly expenses the defendant could make...[$750 monthly payments]." *Id.* The error in this reasoning is the assumption that the restitution order imposes a duty of restitution on the entire Shelton household, which under the Proposed Schedule includes income earned and assets held by Mr. Shelton's wife. This assumption is not supported by the plain language of the Judgment or by the law.

The Judgment in this case imposes on the defendant an obligation to pay restitution in the amount of $112,000. The Judgment does not list anyone other than the defendant as an obligor on the order of restitution, and specifies that "the Defendant must make restitution.." There is simply no language in the Judgment by which it can be inferred that the income and assets of "the Shelton household" can be used to compute the restitution payment if that term is used to include income or assets of anyone other than the defendant.

The statutory authority for the restitution order, 18 U.S.C. § 3664, sets forth a uniform procedure that a court must follow in ordering restitution. The statute refers only to a "defendant," and does not permit a restitution obligation to be imposed on a defendant's family or household. § 3664 provides that disputes as to the amount or type of restitution are to be resolved by the court by a preponderance of the evidence. The government t bears the burden of proving the amount of the loss, while the defendant bears the burden of demonstrating any issues relating to ability to pay. § 3664(e). The restitution order must contain a payment schedule, and the court must consider (1) "the financial resources and other assets of *the defendant*," (2) *the defendant's* projected earnings and other income, and (3) *the defendant's* financial obligations including any obligations to dependents, in fixing the schedule. § 3664 (f)(2)(A)-(C) (emphasis added).

2

1. **Defendant's financial resources and assets**. (a). *Prison Income*. Defendant's financial resources are almost non-existent. The defendant is incarcerated and earns $60 to $65 per month. The defendant also receives what money his wife and family can afford to send him for his commissary which, as the Proposed Schedule makes clear, is not very much money. The $83.00 restitution payment referred to in the first paragraph of the Proposed Schedule was made from the defendant's prison income, i.e. prison wages and commissary money sent by his family.

With respect to the defendant's prison income, The Bureau of Prisons deducts money from the defendant's wages and money sent by his family in the following manner. The BOP computes the total income of the defendant prison wages and any money sent to him by family or friends and totals the amount over a six month period. From this six month amount, the BOP deducts $450 at the rate of $75 per month to cover and inmate's telephone and postage expenses. The balance is then divided in half. One-half of the balance is divided into six monthly payments which is applied to restitution. The remaining half is made available to the prisoner for his commissary and related prison living expenses.

In defendant's case he earns prison wages of $60-$65 per month, which amounts to $390 in a six month period. His family sends him about $150 per month, which amounts to $900 over a six month period. This gives defendant a total prison six month income of $1,290. From this $1,290 the BOP deducts $450 over a six month period, leaving a balance of $840. This amount is divided in half, 420/420. One half is divided into six payments of $70, which is applied to restitution, and the other half is available to the defendant on a monthly basis of $70, to cover all of his expenses while in prison. The calculation is revisited every six month, and the amount of allowance and the amount of restitution in each six month segment is based on the As can be seen

3

from the above example, the defendant's prison wages only amount to $60 to $65 per month, yet the amount of restitution deducted from his prison account exceeds his wages.

(b). *Other Income.* The only other source of income the defendant has is rental income from land in Asan. *Id.* ¶3-4. The Asan property consists of a small commercial building and the house in which the defendant's family lives. The commercial building on the Asan property is being rented on a long term lease. The current lease is $2,000 per month. *Id.* Lease payments are collected by the Bank of Guam, and $1,500 of each lease payment are applied to the secured debt on the property owed by the defendant to BOG. *Id.* ¶ 3 and 4. The $500 monthly income generated by the property that is not paid to the BOG is used to support the defendant's family.

(c). *Other Assets.* The defendant owns 480 shares of stock in the Bank of Guam. The value of these shares fluctuates, but averages about $9.20 per share. The Proposed Schedule makes reference to a parcel of real property once owned the defendant's grandmother. *Id.* ¶13. It is undisputed that the defendant at one point was entitled to an undivided one fourth interest in the land, that the land was never partitioned and that defendant's interest in the land was sold to a third party in order to raise money to pay part of the costs of defendant's legal fees. The Probation Department claims that the Government has an interest in this by virtue of a Notice of Lien for Fine and/or Restitution filed with the Department of Land Management on March 8, 2002. *Id.* ¶14. Whatever efficacy that lien may have had was voided when the defendant's sentence was vacated by the Ninth Circuit in its decision of June 1, 2004. See, *U.S.A. v. Shelton*, Memorandum Decision, No. 02-10096, (9th Cir. 2004). There is no indication in the record that the Notice of Lien was refiled after the defendant was resentenced. In the event the Court believes that this land should be taken into account in determining a payment schedule, defendant submits that the

4

Case 1:01-cr-00007    Document 351    Filed 05/23/2006    Page 4 of 7

current owner of the land must be given notice of any proposed action affecting the property, and the efficacy of the Notice of Lien should be addressed by separate motion and hearing.

**Prison Income**

| | |
|---|---|
| Wages | $ 60 - $65 per month |
| Money from family | $ 150.00 |
| | $ 215.00 |

**Deductions from Prison Income**

| | |
|---|---|
| Standard telephone and postage | ($ 75.00) |
| Restitution | ($ 80.00) |
| Net prison wages available for commissary and prison living expenses | **$ 60.00** |

**Other Income**

| | |
|---|---|
| Rental on Asan property | $ 2,000.00 per month |
| Deductions from other income | ($ 1,500.00) (BOG payment) |
| Net income from other income | **$ 500.00** |

2. **Defendant's projected earnings.** The defendant has always worked, and he intends to find employment once he gets out of prison. Until that time, the defendant's earning capacity is severely restricted. He is limited to his prison wages which average about $60 to $65 per month. Defendant submits that any current order of restitution should take into account (1) the defendant's limited earning capacity during his period of incarceration and (2) the fact that the BOP is currently deducting money for restitution from defendant's prison income in accordance with a standard BOP formula.

5

3. **Defendant's financial obligations.** The one thing that the Proposed Schedule does set forth in detail is the crushing amount of debt carried by the defendant and by his wife. *Id.* ¶19 The defendant owes the Bank of Guam approximately $256,000. This is a debt dating back to 1987 when the defendant was in the video rental (Mad Mel's) business. The debt is secured by a mortgage on defendant's property in Asan. As noted above, the payment plan for this debt requires defendant to remit to the Bank of Guam $1,500 per month from the monthly rental of the property.

The defendant owes $310,000 to his former wife for alimony and back child support payments. *Id.* ¶5. He owes over $150,000 in legal fees related to his defense costs in this matter. *Id.* ¶19. The Department of Revenue and Taxation has assessed tax liability of approximately $123,112 against the defendant and his wife. *Id.* ¶10-11.

In addition, the defendant's wife has the expenses of running a household, raising two children (one of whom is in college) and paying a large amount of debt from a 401k loan (to help pay her husband's legal fees) and from credit cards, stemming from chronic cash flow shortages. The Proposed Schedule does not leave the defendant with any money to contribute any amount to the support of his family, even though 18 U.S.C. § 3664 (f)(1)(B) specifically contemplates that the court will take into consideration a defendant's obligation to support his family when setting restitution payments. In fact, the Proposed Schedule requires Mrs. Shelton to contribute money from her own income, which the financial schedule included in the Proposed Schedule clearly reveal she cannot afford, to pay the defendant's monthly restitution payment.

**Recommendation**. As matters now stand, the defendant has only about $60 a month in prison income with which to pay for his commissary and other prison expenses. This is a threadbare existence. His only other income is $500 pre-tax rental income from the rental of his Asan house, which is being used to help support his family. Even if the Court ordered every dime of defendant's prison and rental income to be applied to the restitution payment, the defendant does not have the income to pay the $750 per month recommended by the probation department.[1] If the Court takes into consideration the defendant's need to contribute even a modest sum to the support of his family, there is simply no money to pay restitution other than what is already being taken by the BOP from the defendant's prison income.

Defendant prays that the Court order that 70% of his prison income be applied to restitution while he is incarcerated, and that upon his release, 10% of his gross income be applied to restitution.

Respectfully submitted this 23rd day of May, 2006.

CIVILLE & TANG, PLLC

By: _____
G. PATRICK CIVILLE
*Attorneys for Defendant*

---

[1] The figure of $750 arrived at by the Probation Department can only be reached by improperly applying some of Mrs. Shelton's income to the restitution order, and by an arbitrary determination by the probation office of what family expenses are essential and what are non-essential. *See*, Proposed Schedule, Recommendations.

7