**FILED**

DISTRICT COURT OF GUAM

AUG 1 6 2006

**MARY L.M. MORAN**
**CLERK OF COURT**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 01-00007 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AUSTIN J. "SONNY" SHELTON, | ) | **REPORT & RECOMMENDATION** |
| | ) | re Restitution Payment Schedule |
| Defendant. | ) | |
| | ) | |

ORIGINAL

This matter is before the Court on the Defendant's request to establish a restitution payment schedule, which was referred to the below-signed judge on December 7, 2005. Upon due consideration of the presentence report ("PSR"), the recommendation of the United States Probation Office ("USPO"), the parties' responses to said recommendation, and the relevant pleadings on file, the Court hereby issues the following Report & Recommendation.

### FACTS

On March 31, 2005, the Defendant was re-sentenced and ordered to pay restitution in the amount of $113,200.00. (Judgment, Docket No. 329, at 7.) Said restitution was to be paid immediately or during the term of incarceration or the term of supervised release. (Id.)

On April 11, 2005, the Defendant requested the Court to issue a schedule for his restitution payments. (Docket No. 330.) The Defendant proposed that his restitution payments not exceed 70% of the amount he receives from employment while incarcerated in the federal institution and, upon his release, not exceed 10% of his gross income. (Id.)

1    Following referral by the District Judge, the Court directed the USPO to prepare a report

2  on the Defendant's financial status and recommend a proposed schedule for the payment of the

3  Defendant's restitution obligation.   (Docket No. 344.)  On April 18, 2006, the USPO submitted

4  its Financial Status and Proposed Payment Schedule Report ("USPO Report") to the Court.

5  Therein, the USPO recommended the following:

6      1.    That the Defendant pay a minimum of $750 per month, with this amount subject

7            to re-evaluation upon the Defendant's release from imprisonment and every six

8            months thereafter while the Defendant is on supervised release;

9      2.    That the Defendant make a lump sum payment of $4,430.40 by selling his stock

10           in the Bank of Guam; and

11     3.    That the Defendant further explain how the proceeds from the sale of his

12           inherited property were used to pay for legal expenses instead of being applied

13           toward restitution, despite the fact that a lien was placed by the Government on

14           all property belonging to the Defendant.

15  See USPO Report at ¶28.

16     On May 1, 2006, the Government filed its response to the USPO Report.  (Docket

17  No. 348.)  The Government adopted the findings of the USPO but recommended that the

18  restitution payments be increased from $750 to $1000 monthly.  The Government believed the

19  increased monthly payments were reasonable since the Defendant's rental income had increased

20  by $250 beginning in May 2006.

21     On May 23, 2006, the Defendant filed his objections to the USPO Report.  (Docket No.

22  351.)  The Defendant again reiterated his request that only 70% of his prison income be applied

23  toward his restitution obligation while he is incarcerated, and that only 10% of his gross income

24  be applied toward restitution upon his release.

25                              **ANALYSIS**

26     The Court begins by acknowledging that a defendant's financial situation does not

27  ///

28  ///

1  permit him to avoid his restitution obligations.[1] Nevertheless, the Court may consider the

2  economic circumstances of a defendant in establishing a schedule of restitution payments.

3  With respect to the manner and schedule of payments, the Court shall consider: "(A) the

4  financial resources and other assets of the defendant, including whether any of these assets are

5  jointly controlled; (B) projected earning and other income of the defendant; and (C) any

6  financial obligations of the defendant; including obligations to dependents." 18 U.S.C.

7  § 3664(f)(2).

8      In this case, the Defendant does not refute the amount of restitution ordered by the

9  District Judge. Instead, he asserts that his financial situation is such that he can not make the

10  monthly payments as proposed by the USPO. Accordingly, he bears the burden of

11  demonstrating his financial resources and the financial needs of his dependents. 18 U.S.C.

12  § 3664(e).

13      After reviewing the factors set forth in 18 U.S.C. § 3664(f)(2), the Court agrees that the

14  Defendant presently does not have the ability to pay $750 monthly while he is incarcerated. In

15  setting the amount of restitution to be paid by the Defendant, the statute requires the Court to

16  focus solely on the financial resources, assets, and income of the Defendant. These "assets" are

17  viewed against his financial obligations, including his obligation to his dependents. The USPO

18  Report takes into consideration the Defendant's as well as his spouse's financial resources.

19  Within that analysis, the USPO determined that the Defendant was able to pay $750 per month

20  in restitution. The Court notes that while it may generally take into consideration both spouses'

21  combined income and assets to satisfy one spouse's separate debt, the restitution statute requires

22  the Court to look solely at the Defendant's financial resources and no other.

23      With this statutory requirement in mind, the Court finds that the Defendant's income is

24  limited to his prison income, which is approximately $60 to $65 per month, and the rental

25  income from his Asan property, which is approximately $2,000 per month. The rental income

26  _____

27      [1] In each order of restitution, the court shall order restitution to each victim in the
amount of each victim's losses as determined by the court and *without consideration of the*
28  *economic circumstances of the defendant.* 18 U.S.C. § 3664(f)(1)(A) (emphasis added).

1 | is generated from property which is subject to a mortgage to the Bank of Guam in the amount
2 | of $375,000.00. It further appears that the mortgage amount is higher than the appraised value
3 | of the property and its buildings. (See USPO Report at ¶1.) From the $2,000 rental, the
4 | mortgagee receives $1,500 per month, leaving a net rental income to the Defendant of $500 per
5 | month. Thus, his combined net income is approximately $565.00 per month. The Defendant's
6 | monthly income is less than the $750 per month recommended under the USPO Report.

7 | The Defendant owns 480 shares of common stock valued at $4,430.00 (USPO Report
8 | at ¶12.) The Defendant acknowledges that he receives $150.00 per month from his family, but
9 | given his limited resources, the Court must allocate this amount as coming from his rental
10 | income.

11 | In addition to the Bank of Guam mortgage debt, the Defendant owes $310,000.00 in
12 | alimony and child support payments under a Consent Judgment in Superior Court of Guam
13 | Civil Case No. CV1245-99, entered on June 12, 2001. Furthermore, in a Superior Court of
14 | Guam Small Claims Division case (SD2011-94), the Defendant and his wife owe the Bank of
15 | Guam $4,412.52 for a MasterCard® debt. Monthly payments thereon are $173.00.

16 | The Defendant and his wife also owe $4,779.00 for a Discover Card credit card, which
17 | has now been closed, however, monthly payments remain at $85.00. The Defendant also owes
18 | $637.00 toward a First Premier credit card debt, with monthly payments of $25.00 thereon.

19 | In assessing the manner and schedule of restitution, the Court must also determine the
20 | Defendant's obligations to his dependents. The USPO Report notes the Defendant's daughter
21 | Amanda attends the Academy of Our Lady of Guam and pays a monthly tuition of $320.00.
22 | (USPO Report at ¶25.) The Report also reveals the Defendant's son Austin receiving a $100.00
23 | monthly allowance. Furthermore, the Report points out the Defendant's household expending
24 | sums of money for groceries ($600.00), gasoline ($125.00), clothing ($150.00) and other
25 | expenditures. The USPO Report further lists liabilities of the Defendant and his spouse which
26 | the Court finds are unnecessary to detail herein.

27 | The Defendant also had an interest in his grandmother's estate. However, the Court
28 | finds he has sold that interest to a Robert Johnson. (See USPO Report at ¶15.)

From his $565 net income, the Bureau of Prisons deducts $75.00 per month for telephone and postage fees and $80.00 for restitution. With these deductions, the Defendant has a $410 balance to pay his remaining financial obligations and his obligations toward his dependents. The Court finds this amount insufficient to provide for his financial and "dependent" obligations. Accordingly, the Court finds that he presently does not have the ability to pay $750 monthly. Instead, the Court recommends that the District Judge order the Defendant to pay 70% of his prison income towards his restitution obligation during the term of his incarceration.

When the Defendant is released, however, the Court believes his restitution payments should be increased. The Court notes that the Defendant intends to find employment once he is released from imprisonment. According to the PSR, when the Defendant was released from custody and awaiting re-sentencing, he made $1,670.00 in a six week period as a car salesman. (PSR at ¶144.) There is no guarantee that the Defendant can realize these same earnings upon his release since his salary was based on commissions. Nevertheless, the Court believes that the Defendant has the potential to find employment upon his release. This future income, when combined with his rental income, should afford him the ability to pay $750 per month towards his restitution obligation.

As for the shares of stock in the Bank of Guam, the Court notes that there is no indication as to whether this stock is held jointly as community property or individually by the Defendant. The Court recommends that this stock be sold, and the revenue realized be applied toward the Defendant's restitution. If the Defendant is the sole owner of said stock, then the full proceeds resulting from the sale of said stock shall be applied toward his restitution obligation. If, however, the Bank of Guam stocks are community property, then only the Defendant's portion of the stock shall be sold, with the proceeds to be applied toward restitution.

Finally, with regard to the USPO's concerns about the sale of the Defendant's share in inherited property, if the Government believes there are irregularities or improprieties associated with said sale or its proceeds, then the Government can initiate the appropriate

1 action. The Court should not initiate said action on the Government's behalf.

2 **RECOMMENDATION**

3 The Court recommends the following payment schedule to the District Judge:

4 1. While incarcerated, the Defendant shall pay no less than 70% of his prison
5 wages towards his restitution obligation.

6 2. While on supervised release, the Defendant shall pay $750 per month, beginning
7 sixty (60) days after release from the Bureau of Prisons or sooner if the
8 Defendant finds employment. If, after considering the Defendant's economic
9 circumstances and responsibilities, the USPO determines that more or less
10 should be due on a monthly basis, the assigned probation officer shall petition
11 the Court accordingly, with notice to the Defendant and the Government. If
12 agreement cannot be reached by the parties, the Court shall re-evaluate the
13 Defendant's ability to pay and determine the appropriate monthly amount.

14 3. Not later than thirty (30) days after any change occurs, the Defendant shall notify
15 the USPO and the Government of any material change in economic
16 circumstances that might affect the Defendant's ability to pay restitution as
17 ordered.

18 4. The Defendant shall make a lump sum payment towards restitution by selling his
19 shares of stock in the Bank of Guam.

20 DATED this _16th_ day of August 2006.

21
22
23 JOAQUIN V.E. MANIBUSAN, JR.
   United States Magistrate Judge
24
25
26
27
28